WIERSMA v MICHIGAN BELL TELEPHONE COMPANY

Docket No. 85729. Submitted April 9, 1986, at Grand Rapids. Decided July 24, 1986.

Claimant, Linda Wiersma, was on an employer-approved disability-related leave of absence prior to being informed by the employer that her office was to be closed. Claimant thereafter sought unemployment benefits. The Michigan Employment Security Commission denied the claim on the ground that the claimant had insufficient credit weeks with the employer, Michigan Bell Telephone Company, to establish a claim. A MERC referee thereafter upheld the MESC decision to deny claimant benefits. The Michigan Employment Security Board of Review then reversed the referee's decision and held that claimant was entitled to preservation of her credit weeks and, therefore, she was entitled to unemployment benefits. Michigan Bell appealed to the Ottawa Circuit Court. The circuit court, James E. Townsend, J., affirmed the Michigan Employment Security Board of Review's decision in favor of the claimant. Michigan Bell appeals.

The Court of Appeals *held*:

1. Claimant was seriously misled by the MESC employees in regard to the information supplied to her.

2. A person may preserve the credit weeks earned in the fifty-two-week period prior to leaving work due to disability in order to establish sufficient credit weeks upon which to base a claim for unemployment benefits. Thus, the board's decision that claimant was eligible to preserve her earned credit weeks during the fifty-two-week period prior to her employer-approved disability-related leave of absence was not contrary to law.

3. By calculating claimant's unemployment due to her dis-

REFERENCES

Am Jur 2d, Administrative Law §§ 755 *et seq.*

Am Jur 2d, Estoppel and Waiver §§ 35 *et seq.,* 123.

Am Jur 2d, Unemployment Compensation § 90.

Comment Note.—Applicability of doctrine of estoppel against government and its governmental agencies. 1 ALR2d 338.

See also the annotations in the Index to Annotations under Unemployment Compensation.

ability from the time she began disability leave, it is apparent that claimant had sufficient credit weeks available.

4. Under the facts of this case, the board of review did not err in determining that claimant was entitled to the preservation of her credit weeks.

5. Under the circumstances of this case, the MESC cannot misinform a claimant in regard to her rights or the appropriate procedures to take and then deny her benefits because she did not know her rights or because she took inappropriate procedural steps.

6. The MESC may be equitably estopped from denying claimant benefits in this case.

7. Reversal of the finding that claimant was entitled to preservation of her credit weeks would almost certainly run contrary to notions of procedural due process.

Affirmed.

1. APPEAL — ADMINISTRATIVE LAW — EMPLOYMENT SECURITY BOARD OF REVIEW.

The Court of Appeals will not disturb an order or decision of the Michigan Employment Security Board of Review unless the order or decision is contrary to law or not supported by competent, material and substantial evidence on the record as a whole (Const 1963, art 6, § 28; MCL 421.38[1]; MSA 17.540[1]).

2. UNEMPLOYMENT COMPENSATION — CREDIT WEEKS — PRESERVING CREDITS — DISABILITY LEAVE.

A person may preserve the credit weeks earned in the fifty-two-week period prior to leaving work due to a disability in order to establish sufficient credit weeks upon which to base a claim for unemployment benefits (MCL 421.28a[6]; MSA 17.530[1][6]).

3. ESTOPPEL — STATE.

The state, as well as an individual, may be estopped by its acts, conduct, silence, and acquiescence.

4. ESTOPPEL — EQUITY.

An equitable estoppel arises where: (1) a party by representations, admissions or silence induces another party to believe facts; (2) the other party detrimentally relies and acts on this belief; and (3) the other party will be prejudiced if the first party is allowed to deny the existence of the facts.

*Libner, Van Leuven & Kortering, P.C.* (by *Roy J. Portenga*), for Linda Wiersma.

*Michael T. Mulcahy,* for Michigan Bell Telephone Company.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Morris J. Klau,* Assistant Attorney General, for Michigan Employment Security Commission.

Before: R. M. Maher, P.J., and T. M. Burns and R. H. Bell,* JJ.

Per Curiam. This case involves the plight of a woman who vigorously attempted to establish her eligibility for and right to unemployment benefits. We find that claimant, Linda Wiersma, is entitled to the benefits. Therefore, we affirm the circuit court's decision which affirmed the Michigan Employment Security Board of Review's decision in favor of the claimant.

Respondent Michigan Bell Telephone Company was claimant's employer. Michigan Bell appeals as of right from the circuit court's decision. Michigan Bell contends that the claimant has no right to benefits because she was not entitled to "preservation" of "credit weeks" under the Michigan Employment Security Act, MCL 421.1 *et seq.;* MSA 17.501 *et seq.* Respondent Michigan Employment Security Commission has filed a brief in support of Michigan Bell's position.

The facts of this case are not seriously in dispute. From April 9, 1973, until November 6, 1981, claimant was employed by the Michigan Bell Telephone Company in its Holland, Michigan office. On January 26, 1981, claimant began an approved disability leave due to a back problem. Her disability leave continued until April 4, 1981, when she took a three-week vacation. At the end of the

* Circuit judge, sitting on the Court of Appeals by assignment.

three-week vacation period, claimant began a pregnancy-related disability leave. On August 21, 1981, while claimant was on disability leave, her supervisor notified her that the Holland office of Michigan Bell Telephone Company was closing.

On that same day, claimant diligently contacted the MESC. In a telephone conversation with a MESC employee, claimant was told that in order to file for unemployment benefits she had to be willing and able to work, she had to be unemployed, and October 1, 1981, was the last day that she could file for unemployment benefits. After claimant explained that she was pregnant, the MESC employee repeated that claimant had to be willing and able to work and that October 1, 1981, was the last day she could file for benefits.

Claimant then double-checked this information by driving to the MESC office to repeat her inquiries. Another MESC employee reiterated the information that claimant had received over the telephone. Because she arrived during the noon hour and thought that the employee might only work during the noon hour, claimant returned to the MESC office later in the day. For the third time, a MESC employee told claimant, in her pregnant condition, that she had to be willing and able to work and that October 1, 1981, was the last day she could file for benefits. After some joking about the possibility of the baby being born soon enough for claimant to receive a doctor's release prior to the asserted October 1, 1981, cut-off date, the MESC employee indicated that he would talk to the MESC lawyer. When the MESC employee returned, he told claimant that she could not filed her claim until the Michigan Bell Telephone Company office actually closed, that claimant had to be willing and able to work when she filed, and that such filing had to take place on or before October 1, 1981.

As will be discussed *infra,* claimant was seriously misled by the MESC employees. Despite the numerous affirmative representations that she had to file before October 1, 1981, in order to receive benefits, such was not true. Rather, claimant could file later and would be entitled to receive benefits. All she would need to do was file the appropriate documents.

Claimant's baby was born on September 27, 1981. Claimant was then placed on another disability-related leave which continued until the end of her employment on November 6, 1981. In regard to her disability, claimant was released by her physician as able to return to work on November 8, 1981. However, because of a pulled muscle in her leg which caused her to be unable to walk, she was not actually able to work until approximately December 3, 1981.

In spite of the numerous affirmative misrepresentations by MESC employees that she had to file before October 1, 1981, claimant nevertheless made another desperate attempt to receive unemployment benefits. Because of the MESC's insistence that she be willing and able to work, claimant waited until her leg felt better and, on December 3, 1981, she filed for unemployment benefits despite what she had been told. On that same day, a MESC employee conducted an interview with claimant. At one point during the course of that interview, claimant was asked if she had preserved any credit weeks or if she had a physician's statement. When claimant inquired as to whether she was supposed to have done so, the employee indicated that indeed she should have done so. However, while other things were explained to claimant, preservation of credit weeks was not. Moreover, at this interview, the employee did not inform claimant that it would still be possible for her to pre-

serve the credit weeks. Rather, claimant was left with the impression that she should have done so. In addition, the MESC waited until January 20, 1982, to officially deny unemployment benefits to claimant on the ground that she had insufficient credit weeks to establish a claim. Even at that time, claimant was not informed that the reason that she had insufficient credit weeks was because she did not provide a physician's statement in order to preserve her credit weeks. We note that there is absolutely no dispute that claimant was disabled and that her physician could have provided her with a statement.

On April 14, 1982, a MESC referee upheld the MESC decision to deny claimant benefits. On July 19, 1984, the Michigan Employment Security Board of Review reversed the referee's decision and held that claimant was entitled to preservation of her credit weeks and, therefore, she was entitled to unemployment benefits.

This Court will not disturb an order or decision of the board unless the order or decision is contrary to law or not supported by competent, material and substantial evidence on the record as a whole. MCL 421.38(1); MSA 17.540(1); Const 1963, art 6, § 28; *Capital Carpet Cleaning & Dye Co, Inc v Employment Security Comm,* 143 Mich App 287, 291; 372 NW2d 332 (1985). Therefore, we affirm.

The applicable section of the Michigan Employment Security Act is § 28a(6), MCL 421.28a(6); MSA 17.530(1)(6). That section was amended on July 24, 1983. The amended section does not have retroactive effect. *Harris v Pennsylvania Erection & Construction,* 143 Mich App 790; 372 NW2d 663 (1985). Therefore, the original language of § 28a(6) before amendment is applicable in this case.

As originally enacted, § 28a(6) provided:

An unemployed individual who has been unable to establish a benefit year solely due to a period of continuous disability may preserve all credit weeks earned by the individual in the 52 week period preceding the individual's first week of unemployment, as defined in section 48, caused by the disability. However, credit weeks may be preserved if the commission receives a written request and a physician's statement, as described in subsections (1) and (2) within 45 days after the commencement of the unemployment, or if the individual is unable to submit the written statement and request due to a medical inability, within 45 days after the end of that medical inability. The individual's benefit year shall begin the first week the individual was both unemployed and disabled and the benefit year shall be extended pursuant to subsection (4).

Respondent-appellant, Michigan Bell Telephone Company, raises numerous issues regarding claimant's eligibility to preserve credit weeks under § 28a(6). Most of these issues have been resolved, contrary to the position asserted by the appellant, in *Kempf v Michigan Bell Telephone Co,* 137 Mich App 574; 358 NW2d 378 (1984), lv den 424 Mich 857 (1985). The main issue presented in *Kempf,* as here, was whether a person who was on medical disability leave from his employment and who, when his disability ends, is unemployed because no work is available at that time, may be deemed to qualify for the preservation of credit weeks earned in the fifty-two-week period prior to the onset of disability leave.

Generally, in order to establish a benefit year, a claimant must have earned a certain number of credit weeks in the base period, i.e., the fifty-two-week period immediately preceding the filing of an application for unemployment benefits. MCL 421.46; MSA 17.550. A credit week is a calendar

week in which a person is employed and earns equal to or greater than a specified wage. MCL 421.50; MSA 17.554. However, MCL 421.28a(6); MSA 17.530(1)(6) provides an exception to the requirement that credit weeks be derived from the fifty-two-week period immediately preceding the filing of the application for benefits. In *Kempf, supra,* this Court held that a person may preserve the credit weeks earned in the fifty-two-week period prior to leaving work due to disability in order to establish sufficient credit weeks upon which to base a claim for unemployment benefits. Thus, the board's decision that claimant was eligible to preserve her earned credit weeks during the fifty-two-week period prior to her employer-approved disability-related leave of absence was not contrary to law.

Michigan Bell's other arguments that claimant had only ten credit weeks to preserve, that claimant's unemployment was not caused by her disability, and that the MESC established an improper base period to use in calculating the credit weeks, are grounded on Michigan Bell's assumption that claimant became "unemployed" for purposes of preserving credit weeks when she resigned from her position with Michigan Bell. This assumption is incorrect. See *Kempf, supra.* By calculating claimant's unemployment due to her disability from the time she began disability leave in January, 1981, it becomes apparent that she had sufficient credit weeks available.

Respondent-appellee MESC argues that even if claimant was eligible to preserve earned credit weeks in order to establish her entitlement to unemployment benefits, claimant did not timely request preservation of her earned credit weeks. Under the facts of this case, we find that the board of review did not err in determining that claimant,

Linda Wiersma, was entitled to preservation of her credit weeks.

There are several reasons in this case why claimant is entitled to preservation of her earned credit weeks even though she failed to submit the written statement and request within forty-five days after the end of her medical inability.

First, claimant diligently attempted to establish her rights and take the appropriate steps by asking MESC employees which procedural steps were appropriate. As between the MESC and claimant, obviously the MESC is presumed to know more about the law and is presumed to be able to apply the law to the facts presented by a claimant better than the claimant would know or be able to do. Rather than giving appropriate advice or even indicating that they were unsure and that the claimant would have to discover her rights and responsibilities by herself, the MESC employees affirmatively misled the claimant into believing that she could not recover unemployment benefits after October 1, 1981. Under these circumstances, most claimants would surely feel that any further action would be useless. Thus, the MESC's actions were a cause of the problems in this case. We hold, under the circumstances of this case, that the MESC cannot misinform a claimant in regard to her rights or the appropriate procedures to take and then deny her benefits because she did not know her rights or because she took inappropriate procedural steps.

Second, the MESC may be equitably estopped in this case. An equitable estoppel arises where: (1) a party by representations, admissions or silence induces another party to believe facts; (2) the other party detrimentally relies and acts on this belief; and (3) the other party will be prejudiced if the

first party is allowed to deny the existence of the facts.. *West Bay Exploration Co v Amoco Production Co,* 148 Mich App 197, 207; 384 NW2d 407 (1986). The state, as well as an individual, may be estopped by its acts, conduct, silence, and acquiescence. *Oliphant v Frazho,* 381 Mich 630, 638; 167 NW2d 280 (1969). Information regarding a claimant's ability to obtain benefits may well be considered a "fact" in this context where the bureaucracy of an administrative agency is involved.

Third, we feel that a reversal of the board's finding that claimant was entitled to preservation of her credit weeks would almost certainly run contrary to notions of procedural due process. See Const 1963, art 1, § 17; US Const, Ams V and XIV.

In conclusion, we find that the decision of the Michigan Employment Security Board of Review that claimant was entitled to preservation of credit weeks was not contrary to law and was supported by competent, material, and substantial evidence on the record as a whole. Therefore, the circuit court did not err by affirming that decision.

Affirmed.